ELLIS, Judge
(dissenting) :
For almost fifty years, Louisiana has had laws regulating the letting of public con *665 tracts. The present version, last amended in 1974, reads, in part, as follows:
R.S. 38 ¡2211(A)(1):
“All public work exceeding the sum of five thousand dollars including both labor and materials to be done by the State of Louisiana, any public corporation or political subdivision of the state and all purchases of materials or supplies exceeding the sum of two thousand five hundred dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this part.”
Since 1948, the following provision, now R.S. 38¡2211(F), has been part of the law:
“Where the governing authority deems it advisable and in the public interest to purchase machinery, equipment or vehicles of certain makes, kinds or types, the advertisement may specify the makes, kinds or types and, after the advertising, the governing authority may purchase those makes, kinds or types, but they shall not pay more than the standard market price for the machinery, equipment or vehicles.”
In 1965, the legislature adopted R.S. 38 ¡2290-2296, for the purpose of regulating closed specifications. Under R.S. 38:2295 (A) a closed specification exists when a product is specified “to the exclusion of all other products of apparent equal quality and utility.”
R.S. 38:2290(A) provides:
“No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all other products, other than the one specified, would detract from either the utility or appearance of the building or the uniform appearance of other public buildings in the immediate vicinity.”
In my opinion, the foregoing provisions constitute a limitation on the authority of the State to act under R.S. 38 ¡2211(F).
In the event it is thought necessary to include a closed specification in a public contract the law provides the following procedures :
R.S. 38:2291:
“Whenever an architect or engineer, either directly or indirectly, has included a closed specification in the specifications for a public building or project, he shall submit a written report to the building authority, ten days prior to the final submission of specifications, which report shall' include the following:
“(1) Identification of each closed specification ;
“(2) A concise statement of the reasons for including a closed specification;
“(3) Identification of other products which are apparently equal and a concise statement as to why they may be excluded under the provisions of R.S. 38:2290.”
R.S. 38:2292:
“The approving authority may accept a closed specification only after it determines that all products brought to its attention are excludable under the provisions of R.S. 38:2290, however, the approving authority must reject the closed specification, should another product of equal utility and appearance be submitted to them prior to letting of the bid, in which event the specifications must be amended so as to allow substitution of an equal.”
The facts to which the foregoing legal provisions must be applied are as follows:
The Civic Center Arena is part of a complex of buildings being constructed in Baton Rouge, which, when completed, will *666 include a court building, the arena, an exhibit hall, a theater and a central mechanical building, which will service all buildings with power, heat, air conditioning, and the like. The contract for the central mechanical building and the court complex had already been let, and construction had begun.
The contract for the arena included two sections of primary electrical switchgear to handle and distribute electricity to the arena. This switchgear was to be installed in the central mechanical building, and necessarily had to be compatible with the switchgear which was to be installed therein under the contract for the construction of the latter building. At the time of the prebid conference, everyone involved was under the impression that “Square D” switchgear was going to be provided by the subcontractor on the central mechanical job. The contract for the arena required that “Square D” switchgear be provided under that contract also.
At the prebid conference, held more than a week before the sealed bids were to be submitted, it was argued, and conceded by the supervising architect and engineer, that the foregoing constituted a closed specification.
Following the prebid conference, the following addendum to the specifications was issued, which, it was testified, was intended to eliminate the closed specification:
“The two high voltage circuit breakers, which must be installed in the switchgear located in the Central Mechanical Room now under contract, shall be furnished and installed by the successful electrical subcontractor for the Arena and Exhibit Hall. These devices shall be as purchased from wholesaler by the successful subcontractor at a cost of $52,908 not including sales taxes, or subcontractor’s profit or overhead.”
Apparently by providing an allowance which all bidders must use, it was felt that all bidders would then be on equal and competitive footing. The amount of the allowance was obtained by asking a representative of “Square D” to give the fair market value of the switchgear called for by the specifications. This figure was checked to be sure it was in line with the prices of similar equipment on the market. It is clear from the testimony that the successful bidder would have to furnish “Square D” switchgear, and that the price for same was not established under competitive conditions.
This case presents, therefore, a classic example of a situation for which the provisions of R.S. 38:2291 and 2292 were designed. I do not doubt that, under the circumstances presented, only Square D switchgear could be used, if proper engineering standards were to be maintained. That fact, however, cannot, in my opinion, excuse the failure of the architects and engineers to comply with the clear provisions of the law.
I do not agree that the addendum had the effect of removing the closed specification, since only Square D equipment could be furnished both before and after it was adopted. Therefore, other products of apparent equal quality and utility were excluded by the specifications, either directly or indirectly. By holding that the provision for an allowance has the effect of removing the closed specification, the majority in this case has provided a method for circumventing the provisions of R.S. 38:2211 (F) and R.S. 38:2291-2292. As a result, Square D switchgear will be purchased at a price which has been established without competitive bidding, and without complying with the provisions of either of the above cited statutes.
I therefore dissent.